UNITED STATES BANKRUTPCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 14-50223-MGD |
| | ) | |
| GREY ERIC EATON, | ) | CHAPTER 7 |
| | ) | |
| Debtor. | ) | |
| | ) | |

OBJECTION TO DEBTOR'S
SECOND MOTION TO CONVERT CASE TO CHAPTER 13 [DOC. NO. 31]

NOW COMES Neil C. Gordon, Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of Grey Eric Eaton (the "Estate"), and, by and through his undersigned counsel, hereby files this *Objection to Debtor's Second Motion to Convert Case to Chapter 13* (the "Objection") and shows this Honorable Court the following:

BACKGROUND

1.  Grey Eric Eaton (the "Debtor") filed a Petition constituting an order for relief under 11 U.S.C. Chapter 7, case No. 14-50223-MGD (the "Case") on January 4, 2014 (the "Petition Date").

2.  Debtor filed under penalty of perjury his *Statement of Financial Affairs* (the "Sworn Statements"), *Schedules "A"* through *"J,"* and *Other Bankruptcy Documents* (the "Sworn Schedules") on the Petition Date.

3.  Trustee was appointed interim Chapter 7 trustee on January 6, 2014, pursuant to 11 U.S. C. § 701.

6497483v1

4. The original meeting of creditors was held on February 5, 2014, pursuant to 11 U.S.C. § 341(a) (the "341 Meeting"). Trustee continued the 341 Meeting to March 10, 2014, to allow Debtor time to produce certain documents requested by Trustee for his review. Debtor did not appear at the March 10th 341 Meeting, and the 341 Meeting was rescheduled to April 8, 2014. The 341 Meeting was finally continued to and concluded on May 8, 2014, at which time Trustee became the permanent chapter 7 trustee.

5. Trustee filed his *Application to Appoint Attorney for Trustee* [Doc. No. 11] on February 11, 2014, and an *Order* [Doc. No. 12] was entered by the Court on February 14, 2014, authorizing the employment of Arnall Golden Gregory LLP as attorneys for Trustee.

6. Pursuant to Debtor's *Divorce Agreement* executed on December 23, 2010 (the "Divorce Agreement"), Debtor "owns 3 acres of real estate located in Glen Arbor, Michigan" (the "MI Property"). The MI Property is in Lee Lanau County, about 25 miles from Traverse City. Debtor's ex-wife, Mary Blaesing, "shall have no right, title and interest in and to the MI Property." Debtor did not schedule the MI Property or list in *Question 10* of the Sworn Statements any transfer of it.

7. During cross-examination of Debtor at the 341 Meeting, Trustee questioned Debtor about the MI Property. Debtor first testified that he no longer owned the MI Property because it had been foreclosed upon approximately a year ago. Debtor testified he pledged the MI Property as collateral for a loan of $100,000.00 for his cabinetry

6497483v1

business. When asked to identify who the lender was, Debtor testified that he had actually borrowed the $100,000.00 from his sister and brother-in-law (the "Insiders").

8. However, Debtor later contradicted his prior testimony, stating that he did not execute a mortgage, but simply an informal note. Therefore, it appears that the MI Property was not actually pledged as collateral for the loan. Debtor then testified that the MI Property was **not** foreclosed, but that he transferred title to the MI Property to the Insiders in partial repayment of the debt (the "Transfer"), but he is unclear as to when the Transfer occurred. Later, it was determined no such Transfer had occurred and title remains in his name.

9. Debtor failed to list any (a) ownership interest in the MI Property on *Schedule "A"* of the Sworn Schedules or (b) transfers in *Question 10 – Other Transfers* of the Sworn Statements or (c) payments to the Insiders in *Question 3 – Payments to Creditors* of the Sworn Statements. Debtor admitted he never told his attorney about the MI Property (or the Transfer if there was one).

10. At the 341 Meeting on February 5, 2014, Trustee instructed the Debtor to produce additional documents, including (a) all state and federal tax returns for years 2010 through 2013; (b) all documents pertaining to the MI Property and the Transfer, including, (i) all evidence of loans, (ii) all foreclosure deeds and other foreclosure documentation, (iii) deeds in lieu of any kind, (iv) current tax bill information, (v) all other appraisal or other MI Property information; (c) and amendments to (i) the Sworn

6497483v1

Statements to reflect the Transfer and (ii) the Sworn Schedules to reflects any loans from the Insiders (altogether, the "Requested Documents").

11. Debtor failed to produce any of the Requested Documents.

12. Instead, Debtor filed his first *Motion to Convert Case to Chapter 13* [Doc. No. 14] on March 9, 2014, (the "First Motion to Convert"), seeking to convert the Case to a proceeding under Chapter 13.

13. On March 18, 2014, Trustee filed an *Objection* to the First Motion to Convert [Doc. No. 15]. Based on Debtor's testimony at the 341 Meeting, the Transfer (if it ever even happened) may be avoidable by the Trustee, pursuant to 11 U.S.C. §547. However, based on Trustee investigation thus far, the Property was never foreclosed upon nor has the MI Property ever been transferred. Indeed, the Debtor remains the sole title owner of the MI Property. Furthermore, the MI Property appears to be unencumbered. Therefore, Debtor clearly filed the First Motion to Convert in response to Trustee's interest shown in the Property.

14. Also on March 18, 2014, Trustee filed a *Motion for Examination of and Document Production by Debtor* [Doc. No. 17], pursuant to Federal Bankruptcy Rule 2004 (the "2004 Motion"), and an *Order* [Doc. No. 19] granting the 2004 Motion was entered by the Court that same day.

15. On April 9, 2014, Debtor withdrew the First Motion to Convert [Doc. No. 28], and produced the Requested Documents.

6497483v1

16. The examination of Debtor, pursuant to Bankruptcy Rule 2004 (the "2004 Examination") was held on April 10, 2014, at which time, Debtor admitted that the MI Property had never been foreclosed. Debtor also indicated that the Insiders would not want Trustee to sell the MI Property and would likely purchase the Property from the Estate to avoid Trustee's sale thereof. At the conclusion of the 2004 Examination, Debtor said he or the Insiders would get back in touch with Trustee to discuss terms of settlement for the value of the MI Property or Debtor's interest therein.

17. No communications were ever received by Trustee from Debtor or the Insiders regarding the MI Property since the conclusion of the 2004 Examination.

18. Instead, Debtor filed his second *Motion to Convert Case to Chapter 13* [Doc. No. 31] on June 18, 2014 (the "First Motion to Convert"), seeking to convert the Case to a proceeding under Chapter 13.

19. Clearly, Debtor filed the Second Motion to Convert in an effort to prevent Trustee from selling the MI Property.

### TRUSTEE'S OBJECTION TO SECOND MOTION TO CONVERT

20. Pursuant to *Schedules "I"* and *"J,"* of the Sworn Schedules, Debtor is a self-employed salesman earning a meager $200.00 per month, while his total monthly expenses are $2,930.00. Debtor's expenses exceed his income by almost fifteen (15) times his income which is almost non-existent at $200.00 per month.

21. The Second Motion to Convert indicates that Debtor is now employed but still only through "assistance from his "ex-wife", will he be able to fund a Chapter 13

Plan. However, Debtor did not file an amended budget to show how his circumstances have changed since the Case was filed that would justify a conversion of the Case to Chapter 13. The present budget does not demonstrate he is eligible for Chapter 13 because he has monthly expenses exceeding his monthly income by $2,730.00. Therefore, Trustee hereby objects to the Second Motion to Convert on that basis as well as the grounds stated hereinafter.

22.    Based on Trustee investigation thus far, the Property was never foreclosed upon, nor has the MI Property ever been transferred by Debtor. Indeed, the Debtor remains the sole title owner of the MI Property. Furthermore, the MI Property appears to be unencumbered. This is clear evidence showing Debtor's purposeful dishonesty in his Sworn Statements and testimony at the 341 Meeting. Only after Trustee has made it known to Debtor that he was aware of the MI Property, did Debtor amend *Schedule "A"* to show his ownership interest in the MI Property [Doc. No. 26].

23.    At the 2004 Examination, Debtor agreed that he would speak to the Insiders and he and/or the Insiders would obtain the funds to settle with Trustee so the Property would not have to be sold. However, Trustee has never received any communication whatsoever regarding the MI Property from the Insiders or Debtor nor has Trustee been provided contact information for the Insiders so Trustee could notify them directly regarding his sale of the MI Property. Instead, Debtor filed the Second Motion to Convert, again revealing his dishonestly and blatant disregard to Trustee.

6497483v1

24. Debtor listed in his Sworn Schedules general unsecured claims totaling $77,750.00 as of the Petition Date. (Of course, this does not include any debt to the Insiders because Debtor failed to list the Insiders as creditors.) Therefore, Trustee could make a substantial distribution to Debtor's unsecured creditors if the MI Property were sold.

25. Furthermore, a conversion to Chapter 13 would prejudice creditors by an extended delay in the administration of the Case while Debtor attempts to fund a plan for sixty (60) months with virtually no income, when Trustee can expedite a liquidation of the asset, complete administration of the Case, and pay creditors in full in a much more expeditious manner. Trustee has incurred the out-of-pocket costs for title research and document review, the Objection to the First Motion to Convert, the 2004 Motion and 2004 Examination, and now this Objection, which appears to be only further effort to stall the Trustee's ability to recover for the Estate funds to pay Debtor's creditors. Indeed, Debtor has failed to even demonstrate his ability to fund a Chapter 13 by his failure to file a plan and new budget. Even by the Second Motion to Convert itself, Debtor admits that he will be dependent on assistance from his EX-wife to fund a Chapter 13 Plan.

26. Debtor is not seeking a conversion of his Case in a good faith effort to pay his creditors because he does not independently have the ability to fund a Chapter 13 plan. Instead, Debtor filed this Motion to Convert in direct response to Trustee's interest shown in the previously undisclosed MI Property.

6497483v1

## LEGAL ANALYSIS

## ARGUMENT AND CITATION TO AUTHORITY:

A. **The Debtor Does Not Have An Absolute Right to Convert its Bankruptcy Case**

27. Section 706(a) of the Bankruptcy Code provides, in relevant part, that "[t]he debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of the title at any time, if the case has not been converted under section 1112, 1208 or 1307 of this title."

28. Section 706(d) of the Bankruptcy Code provides that "[n]otwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter."

29. These provisions were interpreted by the United States Supreme Court in *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007). In that case, a debtor sought to convert his case from one under Chapter 7 to one under Chapter 13. At issue in *Marrama* was whether the debtor had an absolute right to do so. In holding that the debtor had no such absolute right, the Court explained that Section 706(d) conditioned converting a case to another chapter on the debtor's ability to qualify as a debtor under that chapter. *Marrama*, 549 U.S. at 372.

30. To make that determination, the Court looked to Section 1307(c), which outlines a non-exhaustive list of bases for finding "cause" to either dismiss or convert a Chapter 13 case. The Court concluded that, if there was "cause" to dismiss or convert the

6497483v1

debtor's case under Section 1307(c), then that debtor did not have the ability to qualify as a debtor under that chapter in the first instance and conversion should not be permitted. *Id.* at 373. The Court further held that bad faith conduct during the chapter 7 case could constitute the requisite "cause" to deny the motion to convert. *Id.* As the Court explained, "[i]n practical effect, a ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of prepetition bad faith conduct, including fraudulent acts committed in an earlier Chapter 7 proceeding, is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13." *Id.*

31.  Therefore, notwithstanding any change in circumstance--of which the Debtor has shown none to date--Debtor does not have an absolute right to convert his Case. Rather, the Debtor's Second Motion to Convert should be denied, like the one in *Marrama*, because "cause" would exist to dismiss or convert the Debtor's case under Section 1307(c).

B.  **The Second Motion to Convert Should be Denied Because "Cause" Exists to Dismiss Or Convert the Debtor's Case under Section 1307(c) based on the Debtor's Bad Faith Conduct**

32.  As the Supreme Court made clear in *Marrama*, bad faith conduct can constitute "cause" to dismiss or convert a bankruptcy case. That is exactly what we have in this Case. The Debtor's motivation for filing the Second Motion to Convert was to prevent the Trustee from administering the previously undisclosed MI Property. That is not a permissible basis for conversion.

9

6497483v1

33.     Pursuant to the Divorce Agreement, the Debtor received sole ownership of the MI Property. Notwithstanding that fact, Debtor did not list it in his Sworn Statements or Sworn Schedules. Moreover, when asked about the MI Property at his 341 Meeting, Debtor falsely testified that he no longer owned the Property because it was foreclosed approximately one year earlier. Upon further questioning, Debtor subsequently testified that, in fact, he had borrowed $100,000.00 from his sister and brother-in-law and, in exchange, granted them an informal promissory note. Therefore, the MI Property was not pledged as collateral for a loan, and as the Debtor later disclosed, never actually foreclosed. Instead, Debtor testified that he transferred title to the MI Property to his sister and brother-in-law in partial repayment of the debt between the parties (a transfer, which if it occurred, was also not disclosed in the Debtor's original Sworn Statements and Sworn Schedules). Only after Trustee had made it known to Debtor that he was aware of the MI Property, did Debtor amend to disclose his ownership interest in the Property and his alleged transfer of it.

34.     At the 2004 Examination, Debtor agreed that he would speak to the Insiders and he and/or the Insiders would be in communication with Trustee regarding the MI Property. Trustee received no communication whatsoever from anyone. Instead, in another transparent attempt to prevent his creditors' from receiving the benefit of the administration of the MI Property, Debtor filed the Second Motion to Convert. After demonstrating his continuous dishonesty with Trustee and an absolute lack of good faith and disclosure in this Case to date, the Debtor again seeks a quick conversion to Chapter

10

13. This conduct, which is illustrative of nothing more than intent to abuse the judicial process, is at least as egregious as the debtor's conduct in *Marrama*.

35. In *Marrama*, the debtor filed inaccurate statements and schedules that omitted information concerning the value of an asset that the debtor transferred before the bankruptcy filing. On the basis of that bad faith conduct, the bankruptcy court denied the debtor's motion to convert his case to one under Chapter 13, and this denial was subsequently affirmed by the Supreme Court. In *Marrama*, however, the asset was at least disclosed. Here, the Debtor filed inaccurate Sworn Statements and Sworn Schedules, which did not make mention of the MI Property or any transfer thereof or reflect any payments to insiders whatsoever. The Debtor then lied at his 341 Meeting, stating that the MI Property was foreclosed, only then to give various conflicting statements regarding its role in a transaction with the Debtor's sister and brother-in-law. Furthermore, the Debtor has continued to show blatant disregard to Trustee by his dishonesty.

36. Earlier cases decided before *Marrama* set forth a totality of circumstances standard that included (a) the timing of the motion to convert; (b) debtor's motive in filing the motion; (c) whether debtor had been forthcoming with the court and creditors; (d) the effect of conversion on the administration of the bankruptcy case; and (e) whether conversion would further an abuse of the bankruptcy process. See *e.g., In re Wampler*, 382 B.R. 601 (Bankr. S.D.Ind. 2003)(Section 706 was intended to give only the honest debtor an opportunity to voluntarily repay debt and not "as a way for the dishonest debtor

11

6497483v1

to abuse the bankruptcy process, perpetrate a fraud, or engage in bad faith behavior.") *See also In re Pakuris*, 262 B.R. 330, 335-336 (Bankr. E.D. Pa. 2001) (if chapter 13 petitions must be filed in good faith, so must motions to convert), and *In re Sully*, 223 B.R. 582 (Bankr. N.D. Fla. 1998)(a motion to convert is subject to review for lack of good faith).

37.     One of the leading cases prior to *Marrama* that was followed in this Court by other judges of this District was *In re Brown*, 293 B.R. 865, 870 (Bankr. W.D. Mich. 2003), where Judge Gregg found that first time conversions should be denied in the absence of good faith, stating: "Section 706(a) provides honest debtors with a one-time absolute right to convert their chapter 7 case to chapter 11 or 13 so that they may have the opportunity to pay off their debts. The 'absolute' nature of the conversion right does not extend, however, to situations where conversion is sought as a means of thwarting the chapter 7 trustee's attempts to administer the bankruptcy estate or of escaping the unintended consequences of a chapter 7 petition. In such circumstances, as here, the debtor's motion to convert may be denied for lack of good faith." *Accord, In re Acosta-Rivera*, 557 F.3d 8 (1st Cir. 2009), and *In re Warren*, 568 F.3d 1113 (9th Cir. 2009), following *In re Parker*, 351 B.R. 790, 792-793 (Bankr. N.D. Ga. 2006)(Diehl, J.), in holding that the bankruptcy court had the discretion and authority to waive the requirements of §521(a)(1) so there would be no automatic dismissal under §521(i) "if it determines the debtor is abusing and manipulating the bankruptcy system." *Warren* at 1117-1118. Here, the timing and motive are clear.

6497483v1

A. No confirmable Plan

38.    As Debtor has filed no confirmable plan or feasible budget, Trustee must analyze the case under the existing budget, which shows no ability to fund a Plan and, therefore, ineligibility under Chapter 13. The facts of this Case also present the required extreme circumstances as Debtor attempted to hide his ownership interest in the MI Property and then blatantly lied about it to the Trustee when he was at the 341 Meeting. Debtor continued to interfere with Trustee's statutory duties to expedite administration of the Case by his first attempt to convert to Chapter 13 to neutralize the efforts of Trustee even though he was unable to fund a confirmable plan. Debtor again lied to Trustee at the 2004 Examination when he told Trustee that he and/or the Insiders would make arrangements to purchase the MI Property or the Debtor's interest therein from the Estate. Debtor now continues to interfere with Trustee' statutory duties by his second attempt to convert to Chapter 13.

B. Timing and Motive

39.    The timing and motive of Debtor in filing the Second Motion to Convert are manifestly in bad faith. The Second Motion to Convert was filed only after it was clear that Trustee would pursue the liquidation of the MI Property to pay Debtor's creditors. The motive of the Debtor was clear when he proposed he would fund a Chapter 13 plan when his expenses are almost $3,000.00 per month and Debtor is earning only $200.00 per month. Even as indicated in the Second Motion to Convert, Debtor is unable to independently fund a Chapter 13 Plan, and will depend on assistance from his

13

6497483v1

Ex-wife, and no amended budget has been filed. Debtor's only goal in filing Chapter 7 was to get a discharge and to pay his creditors nothing.

C. Prejudice to Creditors

40. In addition to Debtor's inability to propose a good-faith plan and improper motive, there would be prejudice to creditors, as set forth above, that would clearly outweigh conversion to Chapter 13. To allow conversion would delay payment to creditors and further an abuse of the bankruptcy process.

41. Moreover, Debtor cannot convert to Chapter 13 simply to escape the consequences of her Chapter 7 petition, to thwart Trustee's efforts to administer the Estate, or further an abuse of the bankruptcy process. Debtor has the burden of proof to show good faith and eligibility in order to be allowed to convert to Chapter 13. *See In re Grant*, 385 B.R. 627 (Bankr. E.D. La. 2008). Debtor will not be able to carry his burden of proof in order to obtain conversion of his Case to Chapter 13. Debtor has demonstrated manifest bad faith by his failure to give truthful answers or to comply with Trustee's requests.

42. In light of the Supreme Court's decision in *Marrama*, and under the factors set forth above, the Second Motion to Convert should be denied. The Debtor's conduct has not been that of a good-faith debtor. Accordingly, Debtor's attempt to quickly convert this case to one under Chapter 13, at the expense of his legitimate creditors, should not be permitted.

WHEREFORE, Trustee prays that the Objection be sustained and that this Case continue as one under Chapter 7.

Respectfully submitted.

ARNALL GOLDEN GREGORY LLP

By: /s/ Neil C. Gordon
Neil C. Gordon
State Bar No. 302387
171 17th Street, N.W., Suite 2100
Atlanta, Georgia 30363-1031
(404) 873-8596
Neil.Gordon@agg.com
Attorneys for Chapter 7 Trustee

6497483v1

Document      Page 16 of 16

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served all interested parties with a true and correct copy of the foregoing *Objection to Debtor's Second Motion to Convert to Chapter 13* by depositing same in the United States Mail, postage prepaid, addressed to:

Office of the United States Trustee
362 Richard B. Russell Bldg.
75 Spring Street, SW
Atlanta, GA 30303

Michael J. Jacobs
Jacobs Legal, LLC
Northside Tower – Suite 622
6065 Roswell Road
Atlanta, Georgia 30328

Grey Eric Eaton
2849 Baronet Court
Duluth, Georgia 30096

This 20t[h] day of June, 2014.

/s/ Neil C. Gordon
Neil C. Gordon

16

6497483v1