UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 7 |
| GREY ERIC EATON, | CASE NO. 14-50223-MGD |
| Debtor. | |

**MOTION FOR ORDER APPROVING SETTLEMENT AGREEMENT
UNDER FEDERAL RULES OF BANKRUPTCY PROCEDURE RULE 9019**

COMES NOW Neil C. Gordon, Chapter 7 Trustee ("Trustee") for the bankruptcy estate (the "Estate") of Grey Eric Eaton ("Debtor"), by and through the undersigned counsel, and files his *Motion for Order Approving Settlement Agreement Under Federal Rules of Bankruptcy Procedure Rule 9019* (the "Settlement Motion"), between Trustee, Debtor, and Mary C. Blaesing ("Ms. Blaesing"; and with Trustee and Debtor, collectively, the "Parties"). In support of the Settlement Motion, Trustee respectfully shows the Court as follows:

**I. JURISDICTION**

1.      This Court has jurisdiction over this Settlement Motion under 28 U.S.C. §§ 157 and 1334. Venue of this case in this District is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought herein is Rule 9019 of the Federal Rules of Bankruptcy Procedure. This Settlement Motion is a core proceeding under 28 U.S.C. § 157(b)(2).

## II. BACKGROUND

2. On January 4, 2014 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code and initiated the instant bankruptcy case, Case No. 14-50223-MGD (the "Case").

3. On the Petition Date, Debtor filed under penalty of perjury his *Statement of Financial Affairs* (the "Sworn Statements"), *Schedules "A" through "J," and Other Bankruptcy Documents* (the "Sworn Schedules").

4. Trustee was appointed to the Case as the interim Chapter 7 trustee on January 6, 2014, under 11 U.S.C. § 701(a)(1).

5. The original meeting of creditors was held on February 5, 2014, pursuant to 11 U.S.C. § 341(a) (the "341 Meeting"), but it was continued four (4) times before it was finally concluded on May 8, 2014, at which time Trustee became the permanent Chapter 7 trustee, under 11 U.S.C. § 702(d).

6. At the commencement of the Case, the Estate was created under 11 U.S.C. § 541(a), and the Bankruptcy Estate includes all Debtor's legal or equitable interests in property as of the commencement of the Case and any interest in property that the Estate acquires after commencement of the Case. 11 U.S.C. § 541(a)(1) and (7).

7. Trustee is the sole representative of the Bankruptcy Estate. 11 U.S.C. § 323(a).

### The Michigan Property Transfer

8.  At the 341 Meeting, Trustee uncovered that Debtor has an interest in almost three acres of unencumbered, unimproved real property in Glen Arbor, Leelanau County, Michigan (the "MI Property") along with his sister and brother in law to whom he had transferred interests (the "Transfer").

9.  There was no disclosure of the MI Property or Transfer in Debtor's original Sworn Statements.

10. Pursuant to the *Amendment* [Doc. No. 26], filed on April 9, 2014 (the "Amendment"), Debtor amended (a) the Sworn Statements, *Question 10 – "Other Transfers,"* to disclose the Transfer; and (b) the Sworn Schedules, *Schedule A – Real Property*, to show Debtor's ownership interest in the MI Property.

### The Duluth Property

11. Debtor also has an undivided one-half ownership interest in that certain real property known generally as 2849 Baronet Court, Duluth, Gwinnett County, Georgia 30096 (the "Duluth Property")

12. Pursuant to the Amendment, Debtor amended *Schedule C – Property Claimed Exempt*, claiming an exemption in the Duluth Property of $5,369.50 under O.C.G.C. § 44-13-100(a)(1) (the "Homestead Exemption").

13. Debtor and Ms. Blaesing executed a *Security Deed* (the "BofA Deed") dated June 13, 2003, conveying a security deed interest in the Duluth Property to Bank of America, N.A. ("BofA"), the original lender and grantee under the BofA Deed to secure a debt in the original principal amount of $166,370.00 (the "BofA Loan").

14. Previously, Trustee asserted that the BofA Deed was never recorded in the real property records with the Clerk of the Superior Court of Gwinnett County, Georgia.

15. The Parties understand the BofA Loan was sold and is now being serviced by Seterus, Inc., and had a current payoff in the amount of $132,005.55 as of November 19, 2015, with interest accruing at a rate of $17.75 per day (the "Seterus Payoff").

16. Trustee also previously filed a complaint against Seterus, initiating adversary proceeding No. 15-05465 (the "Lawsuit"), asserting that because (a) the BofA Deed was never recorded in the Real Estate Records, Seterus does not have an enforceable security interest in the Duluth Property of the Debtor or the Estate; and, to the extent necessary, the BofA Deed is avoidable by Trustee under 11 U.S.C. § 544(a)(3), because: (i) the BofA Deed did not provide constructive notice of any security interest in the Duluth Property; and (ii) in his position as a hypothetical *bona fide* purchaser of real property, Trustee has a superior claim to Seterus in the Duluth Property.

17. Trustee and Seterus previously reached a monetary settlement of all disputes and issues to avoid further litigation of the Lawsuit for a payment of the sum of $80,000.00 (the "Seterus Agreement").

18. On February 11, 2016, the Court entered an *Order* [Doc. No. 48], granting Trustee's motion, filed pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, approving the Seterus Agreement.

19. Seterus has remitted to Trustee the $80,000.00 settlement amount and Trustee dismissed the Lawsuit on March 2, 2016 [Adversary Docket No. 5].

20. Debtor did not schedule a second position security deed that he and Ms. Blaesing granted on February 7, 2004, against the Duluth Property in the original principal amount of $35,000.00.

21. For many years, Ms. Blaesing, and not Debtor, made the mortgage payments.

22. Debtor, and not Ms. Blaesing, resides at the Duluth Property.

23. Although the Parties deny and reject the opposing party's claims and allegations and do not admit or accept any liability of any nature in connection therewith, to avoid the further cost and the uncertainties of litigation, the Parties mutually desire to settle all disputes and issues.

24. Ms. Blaesing has expressed her desire for Trustee to sell the Duluth Property and pay off the security deeds, and all other liens and encumbrances, so long as she is compensated for carrying more of the financial load than Debtor has done (the "Compensation"); and Trustee has agreed to pursue a sale of the Duluth Property, and pay the first $15,000.00 of the Net Sale Proceeds (as defined hereinbelow) to Ms. Blaesing for the Compensation requested, with the balance of the Net Sale Proceeds split equally between Ms. Blaesing and Trustee on behalf of the Estate.

25. Debtor has agreed to waive his claim to any Homestead Exemption in the Duluth Property and will amend *Schedule "C"* accordingly, and, in return, Trustee has agreed to assert no further interest in the MI Property or the Transfer.

### III. THE SETTLEMENT

26.  Following negotiations, the Parties have reached an agreement to resolve all disputes and issues between them, subject to Bankruptcy Court approval. Trustee attaches a copy of the *Joint Stipulation and Settlement Agreement* (the "Settlement Agreement") as Exhibit "A." Significant terms of the Settlement Agreement are as follows:[1]

    a.  Ms. Blaesing specifically waives such rights and requirements under 11 U.S.C. § 363(h), that Trustee proceed by adversary proceeding in order to sell the Duluth Property co-owned with her, and consents to Trustee's sale of the Property by motion, pursuant to 11 U.S.C. §§ 363(b) and (f).

    b.  Trustee is authorized to list, market and sell the Duluth Property through a realtor of his choice, at a listing price determined solely by Trustee in consultation with Ms. Blaesing and his realtor, for whose employment Trustee will obtain authorization from the Court (the "Realtor").

    c.  From the available Net Sale Proceeds (as defined in the Settlement Agreement), (a) Ms. Blaesing shall receive the first $15,000.00 for the Compensation requested, and (b) the balance of the Net Sale Proceeds shall be split equally between the Trustee on behalf of the Estate and Ms. Blaesing.

    d.  During the period of time Trustee is marketing and attempting to sell the Duluth Property, Debtor will be permitted to remain in the Duluth

---

[1] The following is a summary of the Settlement Agreement and is not intended to be comprehensive. To the extent that anything in this summary is contrary to the terms of the Settlement Agreement, the Settlement Agreement controls.

8610663v1                                               6

Property so long as he and Ms. Blaesing (a) fully cooperate with Trustee and his Realtor, (b) maintain full insurance coverage on the Duluth Property and furnish Trustee with proof of coverage, (c) agree not to allow any waste to be committed to the Duluth Property, (d) maintain the Duluth Property in a clean and presentable condition; (e) agree to cooperate in all respects with Trustee, the Realtor, as well as all other realtors and prospective purchasers, (f) agree to vacate the Duluth Property prior to the closing of any sale, leaving the Duluth Property in a clean, broom-swept condition, with all fixtures and appurtenances remaining with and attached to the Duluth Property.

   e. Debtor (a) will not be permitted or will otherwise waive any claim of Homestead Exemption in the Duluth Property, and (b) will amend *Schedule "C"* to delete any claim of exemption in the Duluth Property; and Trustee will (a) assert no further interest in the MI Property or the Transfer; and (b) file an abandonment of the MI Property following Court approval hereof.

### IV. RELIEF REQUESTED

27. By this Settlement Motion, Trustee requests that the Court approve the Settlement Agreement between the Parties.

### V. BASIS FOR RELIEF

28. Federal Rule of Bankruptcy Procedure 9019(a) provides, in pertinent part, that "[o]n motion by Trustee and after notice of a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). The standard in this Circuit for determining whether to approve a compromise or settlement pursuant to Rule 9019(a)

is set forth in *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544 (11th Cir. 1990), *cert. denied*, 498 U.S. 959 (1990), in which the Eleventh Circuit stated as follows:

> When a bankruptcy court decides whether to approve or disapprove a proposed settlement, it must consider:
>
> (a)   The probability of success in the litigation;
> (b)   the difficulties, if any, to be encountered in the matter of collection;
> (c)   the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it;
> (d)   the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Id.* at 1549. In making its evaluation, a court must not rest its approval of the settlement on a resolution of the ultimate factual and legal issues underlying the compromised disputes. *In re Teltronics Servs., Inc.*, 762 F.2d 185, 189 (2d Cir. 1985). Rather, the court should consider the probable outcome of the litigation, including its advantages and disadvantages, and make a pragmatic decision based on all equitable factors. *Florida Trailer and Equip. Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960).

29.   The proposed settlement between the Parties is the product of arms-length negotiations and reflects the Parties' analysis and consideration of the relevant legal, factual, and economic issues and is in the best interest of the Estate. Absent this Settlement Agreement, Trustee would be required to file an Adversary Proceeding under 11 U.S.C. §363(h) for authority to sell co-owned property, pay the Estate's share of the net sale proceeds to the Debtor on his exemption, and fight with the co-owner

over her contribution claim concerning her payments on the mortgages. Additionally, Trustee would then incur the expense of litigating over the fractional interest in the MI Property. All of the above would result in substantial additional administrative fees and expenses and little or no benefit to the creditors. By reaching the Settlement Agreement, those fees and expenses are greatly reduced and the entire process streamlined thereby greatly benefitting the Estate.

30. Under the standard set forth above and for the reasons previously detailed in this Settlement Motion, Trustee urges the Court to approve the Settlement Agreement.

WHEREFORE, Trustee respectfully requests that the Court enter an Order (i) granting this Settlement Motion; (ii) authorizing Trustee to take actions reasonably necessary to effectuate the terms of the Settlement Agreement; and (iii) granting to the Parties such other and further relief as the Court deems just and appropriate.

Respectfully submitted, this 3rd day of March, 2016.

> ARNALL GOLDEN GREGORY LLP
> *Attorneys for Trustee*
>
> By: */s/ Neil C. Gordon*
> Neil C. Gordon
> Georgia Bar No. 302387
> neil.gordon@agg.com

171 17th Street, NW, Suite 2100
Atlanta, GA 30363
(404) 873-8500

EXHIBIT "A" FOLLOWS

Case 14-50223-mgd    Doc 51    Filed 03/03/16    Entered 03/03/16 15:49:41    Desc Main
Document    Page 10 of 19

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 14-50223-MGD |
| | ) | |
| GREY ERIC EATON, | ) | CHAPTER 7 |
| | ) | |
| Debtor. | ) | |
| | ) | |

JOINT STIPULATION AND SETTLEMENT AGREEMENT

This *Joint Stipulation and Settlement Agreement* (the "Agreement") is by and between Neil C. Gordon, Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of Grey Eric Eaton (the "Estate"), Mary Blaesing ("Ms. Blaesing"), and Grey Eric Eaton ("Debtor"; and collectively with Trustee, and Ms. Blaesing, the "Parties"):

WHEREAS, Grey Eric Eaton ("Debtor") filed his petition under Chapter 7 of Title 11 of the United States Code on January 4, 2014 (the "Petition Date"), thereby initiating Case No. 14-50223-MGD (the "Case"); and

WHEREAS, on the Petition Date, Debtor filed under penalty of perjury his *Statement of Financial Affairs* (the "Sworn Statements"), *Schedules "A" through "J," and Other Bankruptcy Documents* (the "Sworn Schedules"); and

WHEREAS, Trustee was appointed to the Case as the interim Chapter 7 trustee on the January 6, 2014, pursuant to 11 U.S.C. § 701(a)(1); and

WHEREAS, the original meeting of creditors was held on February 5, 2014, pursuant to 11 U.S.C. § 341(a) (the "341 Meeting"), but it was continued four (4) times

1

before it was finally concluded on May 8, 2014, at which time Trustee became the permanent Chapter 7 trustee, pursuant to 11 U.S.C. § 702(d); and

WHEREAS, at the 341 Meeting, Trustee uncovered that Debtor has an interest in almost three acres of unencumbered, unimproved real property in Glen Arbor, Leelanau County, Michigan (the "MI Property") along with his sister and brother in law to whom he had transferred interests (the "Transfer"); and

WHEREAS, there was no disclosure of the MI Property or Transfer in Debtor's original Sworn Statements; and

WHEREAS, pursuant to the *Amendment* [Doc. No. 26], filed on April 9, 2014 (the "Amendment"), Debtor amended (a) the Sworn Statements, *Question 10 – "Other Transfers,"* to disclose the Transfer; and (b) the Sworn Schedules, *Schedule A – Real Property*, to show Debtor's ownership interest in the MI Property; and

WHEREAS, Debtor also has an undivided one-half ownership interest in that certain real property known generally as 2849 Baronet Court, Duluth, Gwinnett County, Georgia 30096 (the "Duluth Property"); and

WHEREAS, pursuant to the Amendment, Debtor amended *Schedule C – Property Claimed Exempt,* claiming an exemption in the Duluth Property of $5,369.50 under O.C.G.C. § 44-13-100(a)(1) (the "Homestead Exemption"); and

WHEREAS, Debtor jointly owns the Duluth Property with his ex-spouse, Ms. Blaesing; and

WHEREAS, Debtor and Ms. Blaesing executed a *Security Deed* (the "BofA Deed") dated June 13, 2003, conveying a security deed interest in the Duluth Property to Bank of

8403866v1

America, N.A. ("BofA"), the original lender and grantee under the BofA Deed to secure a debt in the original principal amount of $166,370.00 (the "BofA Loan"); and

WHEREAS, previously, Trustee asserted that the BofA Deed was never recorded in the real property records with the Clerk of the Superior Court of Gwinnett County, Georgia (the "Real Estate Records"); and

WHEREAS, the Parties understand the BofA Loan was sold and is now being serviced by Seterus, Inc., and had a current payoff in the amount of $132,005.55 as of November 19, 2015, with interest accruing at a rate of $17.75 per day (the "Seterus Payoff"); and

WHEREAS, Trustee also previously filed a complaint against Seterus, initiating adversary proceeding No. 15-05465 (the "Lawsuit"), asserting that because (a) the BofA Deed was never recorded in the Real Estate Records, Seterus does not have an enforceable security interest in the Duluth Property of the Debtor or the Estate; and, to the extent necessary, the BofA Deed is avoidable by Trustee under 11 U.S.C. § 544(a)(3), because: (i) the BofA Deed did not provide constructive notice of any security interest in the Duluth Property; and (ii) in his position as a hypothetical *bona fide* purchaser of real property, Trustee has a superior claim to Seterus in the Duluth Property; and

WHEREAS, Trustee and Seterus previously reached a monetary settlement of all disputes and issues to avoid further litigation of the Lawsuit for a payment of the sum of $80,000.00 (the "Seterus Agreement"); and

WHEREAS, on February 11, 2016, the Court entered an *Order* [Doc. No. 48], granting Trustee's motion, filed pursuant to Rule 9019 of the Federal Rules of Bankruptcy

8403866v1

Procedure, approving the Seterus Agreement, and Seterus has remitted to Trustee the $80,000.00 settlement amount; and

WHEREAS, Debtor did not schedule a second position security deed that he and Ms. Blaesing granted on February 7, 2004, against the Duluth Property in the original principal amount of $35,000.00; and

WHEREAS, Ms. Blaesing, and not Debtor, continues to maintain those payments as well as the payments to Seterus on the BofA Loan; and

WHEREAS, Debtor, and not Ms. Blaesing, resides at the Duluth Property; and

WHEREAS, The Parties mutually desire to settle all disputes and issues and avoid further litigation thereof; and

WHEREAS, Ms. Blaesing has expressed her desire for Trustee to sell the Duluth Property and pay off the security deeds, and all other liens and encumbrances, so long as she is compensated for carrying more of the financial load than Debtor has done (the "Compensation"); and Trustee has agreed to pursue a sale of the Duluth Property, and pay the first $15,000.00 of the Net Sale Proceeds (as defined hereinbelow) to Ms. Blaesing for the Compensation requested, with the balance of the Net Sale Proceeds split equally between Ms. Blaesing and Trustee on behalf of the Estate; and

WHEREAS, Trustee will need to have a complete inspection done by his duly appointed realtor to determine the value of the Property, but it appears to have significant equity that could benefit the Estate and Ms. Blaesing, if the Duluth Property were sold; and

WHEREAS, Debtor has agreed to waive his claim to any Homestead Exemption in the Duluth Property and will amend *Schedule "C"* to reduce any claim of exemption in the Duluth Property, and , in return, Trustee has agreed to assert no further interest in the MI Property or the Transfer; and

NOW, THEREFORE, as set forth below, the Parties agree as follows:

1. Ms. Blaesing specifically waives such rights and requirements under 11 U.S.C. § 363(h), that Trustee proceed by adversary proceeding in order to sell the Duluth Property co-owned with her, and consents to Trustee's sale of the Property by motion, pursuant to 11 U.S.C. §§ 363(b) and (f).

2. Trustee is authorized to list, market and sell the Duluth Property through a realtor of his choice, at a listing price determined solely by Trustee in consultation with Ms. Blaesing and his realtor, for whose employment Trustee will obtain authorization from the Court (the "Realtor").

3. The "Net Sale Proceeds" shall mean all gross proceeds of the sale, less the Seterus Payoff, the payoff on the second position security deed, payoff of any other liens against the Duluth Property, outstanding *ad valorem* real property taxes and the pro-rated share of the current 2016 (or current year) *ad valorem* taxes, capital gains taxes (if any), any water and sewer liens, real estate commissions, all routine closing costs, and all other costs necessary to close a sale of the Property.

4. From the available Net Sale Proceeds, (a) Ms. Blaesing shall receive the first $15,000.00 for the Compensation requested, and (b) the balance of the Net Sale

8403866v1

Proceeds shall be split equally between the Trustee on behalf of the Estate and Ms. Blaesing.

5. During the period of time Trustee is marketing and attempting to sell the Duluth Property, Debtor will be permitted to remain in the Duluth Property so long as he and Ms. Blaesing (a) fully cooperate with Trustee and his Realtor, (b) maintain full insurance coverage on the Duluth Property and furnish Trustee with proof of coverage, (c) agree not to allow any waste to be committed to the Duluth Property, (d) maintain the Duluth Property in a clean and presentable condition; (e) agree to cooperate in all respects with Trustee, the Realtor, as well as all other realtors and prospective purchasers, (f) agree to vacate the Duluth Property prior to the closing of any sale, leaving the Duluth Property in a clean, broom-swept condition, with all fixtures and appurtenances remaining with and attached to the Duluth Property.

6. Debtor (a) will not be permitted or will otherwise waive any claim of Homestead Exemption in the Duluth Property, and (b) will amend *Schedule "C"* to delete any claim of exemption in the Duluth Property; and Trustee (a) will assert no further interest in the MI Property or the Transfer; and (b) will filed an abandonment of the MI Property following Court approval hereof.

7. Following receipt of the fully executed Agreement, Trustee shall file a motion pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure seeking the Bankruptcy Court's approval of the Agreement (the "Settlement Motion").

8. Any dispute over this Agreement shall be determined solely by the Bankruptcy Court in this Case.

9. The Parties acknowledge and represent being fully advised by their respective legal counsel of their rights and responsibilities under this Agreement or, alternatively, having had an opportunity to retain the services of independent legal counsel and having affirmatively elected not to do so, that they have read, know and understand completely the contents hereof, and that they have voluntarily executed the same.

10. The Parties hereto further acknowledge having had input into the drafting of this Agreement or, alternatively, having had an opportunity to have input into the drafting of this Agreement. Accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any party, but rather shall be given a fair and reasonable interpretation, based on the plain language of the Agreement and the expressed intent of the Parties.

11. This Agreement contains the entire, final, complete, and exclusive agreement between the Parties to the subject matter contained herein. There are no other representations, agreements, arrangements, or understandings, oral or written,

8403866v1

between the Parties relating to the subject matter contained herein, which are not fully expressed herein.

STIPULATED AND AGREED TO this 2 day of ~~February~~ MARCH, 2016.

NEIL C. GORDON
CHAPTER 7 TRUSTEE

By: _____
   Neil C. Gordon
   State Bar No. 302387
ARNALL GOLDEN GREGORY LLP
171 17th Street, N.W.
Suite 2100
Atlanta, GA 30363-1031
Tel: (404) 873-8596 / Fax (404) 873-8597
Email: *Neil.gordon@agg.com*
Attorneys for Trustee

MARY C. BLAESING

By: _____
   Robert Scott Rickman
   State Bar No. 604674
*[Signed by Neil C. Gordon with "express permission" granted February 27, 2016.]*
RICKMAN & ASSOCIATES, PC
1755 North Brown Road
Suite 200
Lawrenceville, GA 30043
Tel: (678) 500-9546 / Fax: (678) 391-4422
Email: *rob@thegeorgialawfirm.com*
Attorney for Ms. Blaesing

GREY ERIC EATON, Debtor

By: _____
   Eric Edward Thorstenberg
   State Bar No. 710673
*[Signed by Neil C. Gordon with "express permission" granted ~~February~~ MARCH 2, 2016.]*
6065 Roswell Road, N.E.
Suite 621
Atlanta, GA 30328
Tel: (404) 843-8491 / Fax: (404) 843-1516
Email: *ethortstenberglaw@gmail.com*
Attorney for Debtor

8403866v1

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this day served a true and correct copy of the foregoing *Motion for Order Approving Settlement Agreement Under Federal Rules of Bankruptcy Procedure Rule 9019* by first class United States mail on the following entities at the addresses stated:

Office of the United States Trustee
362 Richard B. Russell Federal Building
75 Ted Turner Drive, SW
Atlanta, GA 30303

Travis E. Menk
Brock and Scott
5121 Parkway Plaza Boulevard
Suite 300
Charlotte, NC 28217

Grey Eric Eaton
2849 Baronet Court
Duluth, GA 30096

Eric E. Thorstenberg
Attorney at Law, LLC
Northside Tower, Suite 621
6065 Roswell Road
Atlanta, GA 30328

Robert Scott Rickman
Rickman & Asociates, PC
1755 North Brown Road
Suite 200
Lawrenceville, GA 30043

This 3rd day of February, 2016.

Neil C. Gordon
Neil C. Gordon
Georgia Bar No. 302387

8610663v1